UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE STEINMEIER,<br><br>                      Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; SHERIFF WILLIAM GORE; FRANK LEYVA; KENNETH EDWARDS; PETER ALVARADO; BRIAN KEENE; WILLIS WHITED; and DOES 3 through 10,<br><br>                      Defendants. | Case No.: 18cv1603 JM (WVG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT** |

In this excessive force claim under 42 U.S.C. § 1983, Plaintiff Suzanne Steinmeier ("Plaintiff") moves to amend her Complaint by naming California Highway Patrol (CHP) Officers Jason Hughes and Ralph Ketcher as Doe Defendants 3 and 4, despite the expiration of the deadline to amend her Complaint in the court's Scheduling Order. (Doc. No. 35.) She also seeks to amend her sole cause of action currently before the court and add a second count based on police bystander liability and conspiracy. (Doc. No. 38.) For the below reasons, the motion is **DENIED**.

## I. BACKGROUND

The parties do not dispute that on the evening of April 27, 2015, Plaintiff and her wife, Michelle Rivera ("Rivera"), led officers from the San Diego County Sherriff's Department and the California Highway Patrol (CHP) on a vehicle chase. A Sheriff's Department helicopter joined the pursuit. Plaintiff and Rivera ultimately abandoned the vehicle and fled on foot into a dark riverbed. Multiple officers, including two Sheriff's Deputies and a police dog, pursued the suspects into the riverbed. Police eventually located Plaintiff and Rivera and arrested them. During the arrest, Rivera was bit by the police dog and Plaintiff was struck multiple times by police. Sheriff's Deputies Frank Leyva (the dog handler) and Kenneth Edwards admit to striking Plaintiff.

On April 26, 2016, Rivera, but not Plaintiff, filed an excessive force claim against Deputy Leyva and others in the U.S. District Court for the Central District of California. *See Rivera v. Cty. of San Diego*, Case No. ED CV 16-795 PSG (KSx), 2017 WL 5643151, at *1 (C.D. Cal. Nov. 14, 2017). The case was based on the same incident, but involved different uses of force, i.e. a police dog bit Rivera and police officers struck Plaintiff. The case went to trial in June 2017 and the jury returned a verdict in favor of the defendants. *Id.* The verdict was subsequently affirmed. 771 F. App'x 436, 437 (9th Cir. 2019).

On March 27, 2017, Plaintiff filed suit in state court against Deputies Leyva and Edwards, as well as Doe Defendants 1 through 10.[1] (Doc. Nos. 1 at 2, 1-5 at 4.) The Complaint described Does 1 through 10 as law enforcement officers who accompanied Deputies Leyva and Edwards into the riverbed, (Doc. No. 1-5 at 6-7), and who observed excessive force being used against Plaintiff and failed to intervene, (*id.* at 15-16). Does 1 through 5 were also described as officers who, in addition to Deputies Leyva and Edwards, used force against Plaintiff. (*Id.* at 9.) At the time of filing her suit, Plaintiff knew that

---

[1] Plaintiff also sued the County of San Diego, the San Diego County Sheriff's Department, the Sheriff, and Deputy Peter Alvarado. (Doc. No. 1 at 2, 1-5 at 4.) On December 28, 2018, the court dismissed with leave to amend Plaintiff's *Monell* claims, but did not dismiss any of the municipal parties at that point. (Doc. No. 13.)

CHP Officers were involved in the vehicle pursuit, but Plaintiff contends she was unaware that CHP Officers used force against her because police reports only revealed that Sheriff's Deputies used forced. (Doc. No. 35 at 3.) According to Plaintiff, the CHP reports in her possession at the time indicated that the only CHP Officers involved were Brian Keene and Willis Whited. (*Id.* at 4.)

On July 16, 2017, Plaintiff filed her First Amended Complaint. (Doc. No. 1-5 at 119-21.) On December 26, 2017, Plaintiff filed her Second Amended Complaint. (Doc. No. 1-6 at 49.) The Second Amended Complaint is the version currently before the court, although it was later amended a third time to name CHP Officers Keene and Whited as Does 1 and 2. (Doc. Nos. 5-2, 5-3.)

By June 13, 2018, Plaintiff possessed an emergency room record in which unidentified CHP Officers reportedly told Plaintiff's emergency room doctor that CHP Officers punched Plaintiff. (*Id.* at 3-4.) Plaintiff's counsel used the emergency room record in a deposition of the doctor. (*Id.* at 4.) Plaintiff was also aware that CHP Officer Keene was at the hospital. (*Id.*) Plaintiff claims this evidence, when compared to the CHP reports she had in her possession, demonstrated a cover-up. (*Id.*) Therefore, on June 13, 2018, Plaintiff amended the Complaint, which was still in state court, for the third time by naming CHP Officers Keene and Whited as Does 1 and 2. (Doc. Nos. 5-2, 5-3.)

On July 16, 2018, Keene and Whited removed the case to federal court. (Doc. No. 1.) In August of 2018, Deputies Leyva and Edwards, as well as the County of San Diego, filed motions for judgment on the pleadings, (Doc. Nos. 8, 9), which the court denied in part and granted in part on December 28, 2018, (Doc. No. 13). On March 25, 2019, Magistrate Judge Gallo set an early neutral evaluation conference, case management conference, and status conference for May 8, 2019. (Doc. No. 14.) On May 1, 2019, Plaintiff served her first request for production of documents on CHP Officers Keene and Whited. (Doc. No. 35 at 6.) On May 9, 2019, Judge Gallo issued a scheduling order setting

June 7, 2019 as the last day for Plaintiff to amend her Complaint.[2] (Doc. No. 20.) On June 7, 2019, the deadline for Plaintiff to amend her Complaint passed. (*Id.*) On June 27, 2019, Plaintiff was served with a response to her May 1, 2019 discovery request.[3] (Doc. No. 35 at 6.) Plaintiff states that she did not "receive" the response until July 2, 2019. (*Id.*)

After receiving the discovery response from CHP Officers Keene and Whited on July 2, 2019, Plaintiff claims she knew the identities of CHP Officers Hughes and Ketcher and understood the significance of their involvement. (*Id.* at 5.) Plaintiff claims this "new" evidence showed that Hughes and Ketcher were with Deputy Leyva as back-up officers when his dog bit Rivera and Plaintiff was arrested. (*Id.*) Plaintiff also contends the evidence shows that Hughes and Ketcher were the ones who struck Plaintiff, and if not, they condoned the strikes and are liable as bystanders. (*Id.*)

On August 15, 2019, Plaintiff filed two "notices of pending suit," directed to Hughes and Ketcher, purporting to inform them that they were Doe Defendants 3 and 4. (Doc. Nos. 26, 27.) On August 16, 2019, Deputies Leyva and Edwards filed a notice of intent to oppose the notices. (Doc. No. 28.) On August 21, 2019, the court interpreted the notices as an attempt to amend the Complaint without first seeking leave to amend and ordered Plaintiff to file any motion to amend the Complaint and/or join a party by September 2, 2019. (Doc. No. 33.) On September 2, 2019, Plaintiff filed the instant motion seeking to name Hughes and Ketcher as Does 3 and 4. (Doc. No. 35.) On September 4, 2019, Plaintiff deposed Hughes and Ketcher. (Doc. No. 38 at 2.) Plaintiff also deposed the Sheriff's

---

[2] Judge Gallo's Civil Chambers Rule III.C states that dates set in his scheduling orders "will not be modified except for good cause shown" and that under Civil Local Rule 16.1(b) "[c]ounsel are reminded of their duty of diligence and that they must 'take all steps necessary to bring an action to readiness for trial.'"

[3] Plaintiff states that she granted CHP Officers Keene and Whited an extension of time to respond to her May 1, 2019 discovery request. (Doc. No. 35 at 6.) Plaintiff does not argue, however, that the extension was responsible for her delay in her seeking to amend the Complaint.

Department helicopter pilot and confirmed that Hughes and Ketcher were "probably" the two CHP Officers that were with Deputy Leyva. (Doc. No. 51 at 14-15.) On September 6, 2019, fact discovery closed. (Doc. No. 20 at 2.) On September 9, 2019, Plaintiff filed a "supplemental declaration" requesting leave to further amend her Complaint by adding a claim of conspiracy to obstruct justice under section 1983 and changing her current theory of liability. (Doc. No. 38.) On September 23, 2019, CHP Officers Keene and Whited, and Deputies Leyva and Edwards, filed responses in opposition. (Doc. Nos. 45, 47.) On September 30, 2019, Plaintiff filed her reply. (Doc. No. 51.)

## II. LEGAL STANDARD

Granting leave to amend a complaint is within the discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). Federal Rule of Civil Procedure 16(b) requires courts to issue scheduling orders limiting the time to amend pleadings and complete discovery. Fed. R. Civ. P. 16(b)(1), (b)(3)(A). Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4) therefore applies when a plaintiff seeks to amend the complaint after the deadline in the pretrial scheduling order for amending the complaint has passed. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). As explained by the Ninth Circuit:

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal citations omitted).

5

## III. DISCUSSION

Plaintiff does not show good cause under Rule 16(b)(4) for substantially amending her Complaint at this late stage in the litigation. Prejudice to the Deputies and CHP Officers would result. Also, the application of California's Doe defendant rule, CAL. CIV. PROC. CODE § 474, does not mandate that Plaintiff be allowed to amend the Complaint despite Federal Rule of Civil Procedure 16(b)(4) and Plaintiff's lack of diligence. For these reasons, and as discussed further below, Plaintiff's motion is denied.

### A. Diligence

Plaintiff's reasons for bringing the instant motion so late do not support a finding of diligence. In her September 2, 2019 motion, Plaintiff states she "just learned," based on "CHP broadcasts" that were produced on July 2, 2019, that CHP Officers Hughes and Ketcher acted as back-up officers to Deputy Leyva. (Doc. No. 35 at 5.) She claims "[h]ence, there is now substantial evidence that Hughes and/or Ketcher struck or punched plaintiff, or condoned the punching or striking, making them liable under bystander liability." (*Id.*) Plaintiff argues she could not have obtained the July 2, 2019 discovery earlier because CHP Officers Keene and Whited were "not sued until December 2018, at which point they removed the case to federal court, thus precluding any discovery until after the parties' Rule 26(f) conference." (*Id.* at 5-6.)

Plaintiff's argument is unpersuasive for several reasons. First, she does not explain why the CHP broadcasts produced on July 2, 2019 provide information that could not have been obtained earlier through diligent investigation. She merely states, in conclusory fashion, that when compared to "San Diego recordings," the evidence "establishes" that Hughes and Ketcher were with Deputy Leyva as back-up. (*Id.* at 5.) Plaintiff's counsel also states in a declaration that, at some point after the *Rivera* case had ended, he listened to the San Diego Sheriff's Department helicopter recording "with a fine-toothed comb" and realized the "cryptic reference the helicopter pilot made to two CHP units were not Keene and Whited, but rather Hughes and Ketcher." (Doc. No. 35 at 13.) Again, without further information, this fact, if true, is not supportive of Plaintiff's counsel's diligence.

6

Second, the inference that Hughes and Ketcher struck Plaintiff or condoned striking Plaintiff simply because they were with Deputy Leyva as back-up is not supported by any direct evidence.[4] Third, Plaintiff incorrectly states that CHP Officers Keene and Whited were not sued until December 2018, and then they removed the case to federal court. In fact, they were named as Does 1 and 2 on June 13, 2018 when the case was still in state court, (Doc. Nos. 5-2, 5-3.) The case was removed on July 16, 2018. (Doc. No. 1.) Fourth, Plaintiff's claim she was precluded from obtaining discovery because the case was removed to federal court on July 16, 2018 does not support her diligence in investigating the case prior to removal or after the Rule 26(f) conference. Plaintiff does not even identify when the Rule 26(f) conference was held. Finally, Plaintiff does not describe the steps she took to identify witnesses to her arrest. Although the parties do not state when the helicopter video evidence that is part of the record was disclosed, Plaintiff acknowledges she possessed the "helicopter recording" prior to receiving discovery on July 2, 2019 (and was likely in possession of the video during the *Rivera* trial, which concluded in mid-2017). The video clearly shows there were at least six officers in the riverbed who could have witnessed at least part of the arrest. (*See* Doc. No. 34-9 Exhibit F.) Failure to identify all potential eyewitnesses to the arrest early in litigation, despite the alleged reluctance of police to volunteer information, is inconsistent with diligent prosecution of an excessive force case. Accordingly, Plaintiff's argument that she acted diligently is unpersuasive.

Furthermore, the record supports that, prior to June 7, 2019, Plaintiff was in possession of sufficient information and had ample time to conclude that her Complaint should be amended in the manner in which she now requests. First, Plaintiff should have had, and likely did have, possession of the sole piece of evidence that CHP Officers used force against Plaintiff. That piece of evidence – a double hearsay statement contained in Plaintiff's medical record asserting that CHP Officers, as opposed to or in addition to

---

[4] Although Plaintiff deposed Hughes and Ketcher on September 4, 2019, (Doc. No. 38 at 2), she cites no testimony from those depositions to support her new theory.

Sheriff's Deputies, punched Plaintiff – was likely available to Plaintiff within days after she was taken to the hospital on April 27, 2015. As pointed out by the CHP Officers, Plaintiff signed a request for the release of her medical records on February 3, 2017. (Doc. No. 45 at 19.) Plaintiff possessed the record, or the information contained in the record, at a May 30, 2017 deposition of the emergency room nurse, (*id*. at 18), and before the *Rivera* trial in June of 2017, (Doc. No. 47 at 8).

Second, Plaintiff had evidence that CHP Officers other than Keene and Whited went into the riverbank in pursuit of Plaintiff and Rivera. Plaintiff admits she was aware, as of March 7, 2017, that CHP Officers were acting as backup for Deputy Leyva when Rivera was bitten. (Doc. No. 35 at 4.) Plaintiff was also aware, as of March 7, 2017, that CHP Officer Keene testified in a deposition that he believed CHP Officers from the CHP's Oceanside office went into the riverbed, but he and CHP Officer Whited, who were from the CHP San Diego office, did not. (Doc. No. 45 at 11-12.) Plaintiff nonetheless named Keene and Whited as Does 1 and 2, and waited three months to do so. (*Id.* at 13.) Moreover, as of the June 2, 2017 deposition of CHP Sergeant Fuentes, Plaintiff had a list of four CHP Officers, including Hughes and Ketcher, who were "assigned" to the incident and were likely the ones in the riverbed. (Doc. No. 45 at 15-17.) Plaintiff did not, however, seek to depose any of the four officers until after the June 7, 2019 deadline. (Doc. No. 45 at 15-17.)

Plaintiff argues her investigation of the case was hampered because "CHP officers have been wrongly denying their involvement and trying to cover it up." (Doc. No. 35 at 4.) In support of this allegation, Plaintiff points to the omission of any reference to Oceanside CHP Officers Hughes and Ketcher in San Diego CHP Officer Keene's report, which was written as though he were the arresting officer. (Doc. No. 35 at 4.) Certainly, the CHP's inability, or possible disinclination, to identify the CHP Officers present for Plaintiff's arrest, and voluntarily share that information with Plaintiff's counsel early in the litigation, is not something to be commended. It does not excuse, however, Plaintiff's duty

8

18cv1603 JM (WVG)

of diligence to identify crucial witnesses, as well as the proper defendants, by propounding at least some form of discovery directly to the officers who might have been there.[5]

Finally, Plaintiff's unorthodox, if not improper, attempt to amend the Complaint does not support her cause. Five weeks after the expiration of the amendment deadline, Plaintiff filed two documents with the court's CM/ECF system styled as "notice[s] of pending suit." (Doc. Nos. 26, 27.) The notices were directed to Hughes and Ketcher, who were not parties to the suit, directing them to "please take notice that pursuant to *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1462-64 (9th Cir. 1988) you have been sued as Defendant DOE 3 [or DOE 4] in the above entitled action." (*Id.*) The court ordered Plaintiff to file any motion to amend the Complaint and/or join a party by September 2, 2019. (Doc. No. 33.) Plaintiff initially complied by filing the instant motion on September 2, 2019. (Doc. No. 35.) Plaintiff then violated the court's order by filing a September 9, 2019 document styled as a "supplemental declaration" by Plaintiff's counsel requesting leave to make yet another amendment to her Complaint by adding a claim of conspiracy to obstruct justice. (Doc. No. 38.) Thus, Plaintiff was at least five weeks late in even attempting to amend her Complaint, was eight weeks late in filing a motion to amend the Complaint (and may have been even later had the court not specified the deadline for filing the motion), and attempted to amend the Complaint, for a fifth time,

---

[5] In her reply, Plaintiff cites several additional facts to support her claim of a cover-up that allegedly impeded her investigation. Specifically, she claims: (1) on September 3, 2019, the CHP custodian of records testified that CHP Officer Whited's body microphone recording was destroyed in violation of CHP policy, (Doc. No. 51 at 6, 14); (2) in 2017, CHP Officer Keene testified that he was close enough to hear Deputy Leyva's commands, but on September 3, 2019, he testified that he could not hear any commands, (*id.* at 6); (3) Deputies Leyva and Edwards omitted identifying the CHP Officers who were with them, (*id.* at 14); (4) CHP Officers Keene and Whited never disclosed that Hughes and Ketcher were with Deputy Leyva, (*id.*); and (5) no CHP records identify Hughes and Ketcher as being within Deputy Leyva. (*Id.*) These facts do not, however, show that Plaintiff lacked the information that would have allowed her, through diligent investigation, to long ago reach the conclusion that she now claims serves to justify the untimely amendment of her Complaint.

9

after this court's deadline to submit the instant motion had already passed. Accordingly, the lack of diligence apparent from the record is sufficient grounds to deny Plaintiff leave to amend her Complaint. *Johnson*, 975 F.2d at 609 ("If [the moving] party was not diligent, the inquiry should end.").

### B. Prejudice

The existence and degree of prejudice to the CHP Officers and Deputies resulting from Plaintiff's proposed amendments serves as an additional reason to deny Plaintiff's motion. *Id*. The CHP Officers and Deputies assert, and the court has no reason to disbelieve, that if the Complaint were amended, discovery would need to be re-opened even though it closed on September 6, 2019. (Doc. No. 45 at 22.) Indeed, the changes Plaintiff seeks to make to her Complaint, which has already been amended several times, substantially alter her claim. Not only does she seek to name two CHP Officers as Doe Defendants and add an additional cause of action, she also seeks to significantly change the theory of liability currently before the court. Specifically, she no longer alleges that only the Sherriff's Deputies used force against her. Instead, she alleges the Deputies either used forced against her, or conspired to stand idly by as CHP Officers Hughes, Ketcher and/or Whited did so, or alternatively, that those CHP Officers conspired to stand by as the Deputies used force. (Doc. No. 38-1 at 8, 9, 11, 18.) She also alleges the police conspired to prevent body-worn microphones from recording evidence, (*id.* at 4), conspired to destroy recordings, (*id.* at 17), and the police helicopter pilot intended for Rivera to be bitten by the police dog, (*id.* at 6). Her new allegation also hinges on a theory of police bystander liability. (Doc. No. 35 at 5.) These dramatic changes to the Complaint support Defendants' purported need to conduct further discovery if the Complaint were amended. Courts have cited the addition of claims that advance different legal theories that require proof of different facts and the need to re-open discovery in support of finding prejudice. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990); *see also Moriarty v. Cty. of San Diego*, Case No. 17cv1154 LAB (AGS), 2019 WL 4643602, at *4 (S.D. Cal. Sept. 24, 2019)

(denying leave to amend under 16(b) where unwarranted delay would prejudice the defendants "generally").

Furthermore, Plaintiff filed her motion to amend four days after the Sheriff's Deputies filed their motion for summary judgment. (Doc. Nos. 34, 35.) Allowing Plaintiff to amend would likely require the court to afford the Deputies the opportunity to file a second or amended motion for summary judgment, as well as to afford the newly added parties the opportunity to file their own motions. *Lockheed*, 194 F.3d at 986 (denying a motion to amend by relying, in part, on the fact that plaintiff sought to amend the complaint after a motion for summary judgment was filed). While the trial is not scheduled until June 22, 2020, additional discovery and motions would quickly occupy that time.

In sum, after years of litigation, including an unsuccessful jury trial result by her wife in 2019 in the Central District of California arising out of the same event, Plaintiff now seeks to convert this action into a vast conspiracy case involving two law enforcement agencies. Being mere months away from trial in this case, Plaintiff's request to amend the Complaint to add new parties and an overarching conspiracy would derail the action entirely, open the door to the full panoply of discovery and renewed motions practice. In essence, rather than extending the action for a few months, substantially greater time would be needed for the tasks enumerated above. The parties have waited long enough for trial or other resolution. Defendant Sheriff's Deputies have acknowledged their use of force from the outset of the case and never identified other law enforcement personnel being involved in the use of force of which Plaintiff has complained. Prejudice, in the form of unreasonable delay and attendant unnecessary litigation costs for the defense would result if the motion to amend is granted. Accordingly, prejudice to the Deputies and CHP Officers is an additional reason to deny Plaintiff's motion.[6]

---

[6] For the same or similar reasons, Plaintiff's motion would likely fail Rule 15(a)'s more liberal amendment standard due to the apparent futility of additional discovery, especially given that Plaintiff has already deposed CHP Officers Hughes and Ketcher, (*see* Doc. No. 38 at 2), as well as the resulting undue delay.

11

### C. California's Doe Defendant Rule

Plaintiff argues she must be allowed to name CHP Officers Hughes and Ketcher as Doe Defendants 3 and 4 under California's Doe defendant rule, CAL. CIV. PROC. CODE § 474, and under *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1462-64 (9th Cir. 1988), *vacated on other grounds*, 490 U.S. 1087 (1989), *reinstated by* 886 F.2d 235 (9th Cir. 1989). Plaintiff argues her diligence, or lack thereof, under Rule 16(b)(4) is irrelevant because "[a]ll that matters is that the suit be filed before the statute of limitations runs." (Doc. No. 35 at 6.) Plaintiff claims she satisfied the applicable California statute of limitations because she filed her initial Complaint on March 27, 2017, i.e. within two years of the April 27, 2015 incident date, and because she sought to amend the Complaint by adding Hughes and Ketcher on August 15, 2019, i.e. within three years of her March 27, 2017 Complaint. (*Id.* at 7, 11.) In their opposition, the Deputies and CHP Officers do not address the issue.

California's Doe defendant rule allows plaintiffs to name Doe defendants within three years from filing the complaint without violating the applicable statute of limitations. CAL. CIV. PROC. CODE § 474; *Lindley v. General Electric Co.,* 780 F.2d 797, 799 (9th Cir. 1986). In *Cabrales*, the Ninth Circuit held, in a section 1983 case, that California's Doe defendant rule, which has no notice requirement, controlled over Rule 15(c)'s requirement that an amendment that changes a party will not relate back to the complaint filing date unless the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party. 864 F.2d at 1462-64. The court held, "[t]he California pleading practice allowing new defendants to be named after the original complaint is filed without violating the statute of limitations is . . . . a substantive state policy that is applicable in the federal courts." *Id.* at 1464 (citing *Guaranty Trust Co. v. York,* 326 U.S. 99, 110 (1945)). In reaching its decision, the court relied on a Supreme Court case holding that, in section 1983 cases, "'the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law.'" *Id.* at 1463-64 (quoting *Wilson v. Garcia*, 471 U.S. 261, 269

(1985)). Because the California rule tolled the applicable California statute of limitations, the court reasoned that, under *Wilson*, the California Doe defendant rule overrode Rule 15(c)'s notice requirement. *Id.* at 1464. The court, therefore, allowed the plaintiff to amend her complaint, nearly two years after filing suit, by naming another defendant even though under Rule 15(c) the amendment would not have related back to the filing date and the claim probably would have been barred by the statute of limitations. 864 F.2d at 1462; *see also Green Valley Corp. v. Caldo Oil Co.*, Case No. 5:09cv4028 LHK, 2011 WL 3501712, at *4 (N.D. Cal. Aug. 10, 2011) (citing *Cabrales* to find that California's relation-back law applied, despite Rule 15, to state law claims over which the federal court had supplemental jurisdiction).

As applied here, *Cabrales* does not empower Plaintiff to amend her Complaint regardless of Rule 16(b)(4)'s good cause standard or her counsel's lack of diligence. *See Moriarty*, 2019 WL 4643602, at *4 (denying, under Rule 16(b)(4), an untimely request in a section 1983 case to name Doe defendants, add new claims, and change theories of liability). *Cabrales* addressed Rule 15(c)'s notice requirement, not Rule 16(b)(4)'s good cause requirement. Plaintiff cites no comparable case, and the court is aware of none, allowing courts to disregard Rule 16(b)(4). *See Viehmeyer v. City of Santa Ana*, 67 F. App'x 470, 472 (9th Cir. 2003) (recognizing the conflict between California's Doe defendant rule and Rule 16(b)'s good cause requirement, but expressly declining to decide which controlled). Furthermore, in *Cabrales*, the person plaintiff sought to name as a defendant argued that the date he was named would not relate back to the date the complaint was filed because he had no prior notice of the claim as required by Rule 15(c) and the statute of limitations had, therefore, expired. 864 F.2d at 1463. The Defendants here raise no Rule 15(c) notice or statute of limitations issue. Certainly, a potential conflict exists between the application of state statutes of limitations in federal question cases and the application of Federal Rules of Civil Procedure granting courts the authority to set their own deadlines for amending complaints and otherwise control their own dockets. Without

authority clearly directing otherwise, however, the court cannot disregard Rule 16(b)(4) and Plaintiff's lack of diligence in favor of California's Doe defendant rule.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Amend the Complaint is **DENIED.**

IT IS SO ORDERED.

DATED: January 16, 2020

JEFFREY T. MILLER
United States District Judge